Jerry Ronald MACK, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–92–00791–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

July 8, 1993.

---

Eugene Jones, Houston, for appellant.

John B. Holmes, Kimberly Aperauch Stelter, Houston, for appellee.

## OPINION

HEDGES, Justice.

Appellant, Jerry Ronald Mack, was charged with the offense of possession of cocaine with intent to deliver. A jury found appellant guilty, sentenced him to 10–years confinement and assessed a $2,000 fine. We affirm.

In two points of error, appellant challenges the factual sufficiency of the evidence to support the jury's findings. In reviewing the sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Butler*

*v. State*, 769 S.W.2d 234, 239 (Tex.Crim. App.1989). Because the jury sits as the fact finder, it is its duty to judge the credibility of the witnesses; the jury can choose to believe all, some, or none of the witnesses' testimony. *Bowden v. State*, 628 S.W.2d 782, 784 (Tex.Crim.App.1982). The reconciliation of any conflicts in the evidence is within the province of the jury. *Id.* In our review of the sufficiency of the evidence, we do not reevaluate the probity of an individual item of evidence. *Fernandez v. State*, 805 S.W.2d 451, 456 (Tex. Crim.App.1991). The standard of review is the same for both direct evidence and circumstantial evidence cases. *Geesa v. State*, 820 S.W.2d 154, 158 (Tex.Crim.App. 1991).

The evidence viewed in the light most favorable to the verdict is as follows: Officers Carr and Rutland of the Houston Police Department were on patrol at 11:20 p.m. in an area of north Houston when they received a call from Officer Rodriguez regarding a suspicious-looking vehicle. Because he was "a one-man unit," Rodriguez wanted some support in his investigation of the vehicle. He told Carr and Rutland to meet him at a local truck stop, where the suspicious-looking vehicle was parked. Carr was already familiar with the truck stop; he had previously been asked by the owner to "run out" vagrants who used the property as a place to sleep.

The vehicle to which Rodriguez referred was parked at the very back of the truck stop, in a dark area by a dumpster, with its rear bumper against a fence. The vehicle had no front license plate, and because of its position, the officers could not tell whether it had a rear license plate. Two occupants sat in the car, one in the driver's seat, and the other, appellant, in the back seat. Carr and Rutland were concerned that the vehicle had been used in a highjacking and that it might be stolen.

Based on these suspicious circumstances, the officers decided to talk to the car's occupants. Rodriguez and Carr asked the vehicle's occupants to sit in their respective police cars while they talked to them. Appellant, uncuffed, sat in Carr's vehicle, and

the other occupant sat in Rodriguez' car. Carr conducted a pat-down search on appellant before appellant's entry into the car and found no weapons. Before placing appellant in the back seat of his vehicle, Carr checked on and under the back seat for contraband. His search was fruitless. Carr testified that he always conducts a search of the back seat area before placing an individual there, because suspects sometimes try to hide controlled substances, small knives, or guns, in and under the seat.

While appellant sat in the back seat of Carr's vehicle, Carr used the vehicle's computer to determine whether appellant had any outstanding warrants. Finding none, Carr released him. After appellant had left the vehicle, Carr again examined the area on and under the back seat. He discovered a "large bag" of crack cocaine under the seat. Carr retrieved the bag of cocaine and arrested appellant.

In point of error one, appellant contends that the evidence is factually insufficient to support the jury's finding that he possessed a controlled substance because "the State has failed to exclude every reasonable hypothesis for the placement of the contraband, and a finding of guilt beyond a reasonable doubt is not rational." Appellant argues that the State "never made clear ... if the contraband was found before or after" another individual, arrested by Rutland, was placed in Carr's vehicle.

■ This case was tried on July 28, 1992, well after the Court of Criminal Appeals handed down *Geesa*. In *Geesa*, the court rejected the use of the reasonable hypothesis analytical construct "as a method of appellate review for evidentiary sufficiency[.]" 820 S.W.2d at 161. Because that holding applied to cases tried after November 6, 1991, the State was not required to disprove reasonable alternative hypotheses for the placement of the contraband. *Id.* at 165.

■ Moreover, the evidence supports the jury's conclusion that it was appellant who placed the bag of crack cocaine under the back seat. Whether the individual that Rutland arrested was placed in Carr's vehi-

cle before or after appellant makes no difference as long as no one else sat in the back seat from the time Carr first checked the seat, before appellant got in, until the time Carr last checked it, after appellant left the car. Carr's testimony supports the conclusion that no one did:

Q. From the moment you initially checked this vehicle to the moment Mr. Mack had gotten into the vehicle, had anybody else gotten in the vehicle, sir?

A. No.

. . . .

Q. And your testimony is that it [the cocaine] was somewhere in the back of the police car?

A. It was directly under where he [appellant] was sitting in the police car.

Q. Who else—who else was in the back seat of that car?

A. Nobody.

. . . .

Q. And you found the substance [the cocaine] immediately after Mr. Mack got out of your vehicle?

A. Within seconds.

The evidence was sufficient for the jury to conclude that appellant was the one who placed the bag of crack cocaine under the back seat of Carr's vehicle. We overrule point of error one.

In point of error two, appellant argues that the evidence "is insufficient to support a finding of guilt on the first degree felony offense of possession with the intent to deliver a controlled substance." Appellant argues that the facts are just as consistent with the inference that appellant had just purchased the crack cocaine for his personal use as they are with the inference that he possessed the drugs with the intent to deliver them.

■ Intent to deliver may be proved by circumstantial evidence, including evidence regarding a defendant's possession of the drugs. *Smith v. State*, 737 S.W.2d 933, 941 (Tex.App.—Dallas 1987, pet. ref'd). The following evidence supports the jury's conclusion that appellant had the intent to deliver the 8.9 grams of crack cocaine:

★ The area where appellant was apprehended is a known drug-dealing area. In fact, Carr testified that "we have bought considerable amounts of crack cocaine" in the area in which appellant was apprehended.

★ There were 29 rocks of crack cocaine in the bag, with a total worth of approximately $600.

★ Appellant had in his possession no paraphernalia for smoking or otherwise using cocaine.

Furthermore, Carr, who had considerable experience with crack cocaine and crack users, testified:

Q. Is it normal or customary for you to find this amount of crack cocaine on an individual crack user?

A. No, sir, it's not.

Q. Based upon your experience, do you have an opinion as to what exactly the use—such magnitude of rocks would be for?

A. This cocaine is for resale.

. . . .

Q. Have you noticed the difference between, like I said—what would you normally find on a crack user as you've described?

A. One or two, maybe three, pieces, but I've never found more than that.

Rutland, who has arrested many crack dealers and crack users, confirmed that these circumstances logically indicated appellant's intent to deal, rather than use, the crack cocaine he possessed.

In light of this evidence, we cannot find that the facts in this case are just as consistent with the inference of personal use as they are with the inference of intent to deliver. We agree with our sister court that

[i]f conflicting inferences concerning [the defendant's] intent exist, this Court must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and we must defer to that resolution.

*Johnson v. State*, 829 S.W.2d 836, 837 (Tex. App.—Dallas 1992, no pet.) (overruling appellant's point of error that the evidence was insufficient to show that he possessed the cocaine with the intent to deliver it).

The evidence is sufficient to support the jury's conclusion that appellant possessed the crack cocaine with the intent to deliver it. In so holding, we reject appellant's contention that this case is analogous to *Turner v. State*, 681 S.W.2d 849 (Tex. App.—Dallas 1984, pet. ref'd). In *Turner*, the defendant asserted that the evidence was factually insufficient to support his conviction of possession of a controlled substance with intent to deliver. *Id.* at 850. He had been apprehended in a "high drug traffic area" in possession of a stocking containing 17 foil packages of controlled substances worth about 150 dollars. *Id.* He did not possess any drug paraphernalia on his person. *Id.* The Dallas Court of Appeals agreed with the defendant that the evidence was insufficient to support his conviction, writing:

The facts are as consistent with the inference that appellant had just purchased the drugs for personal use, as they are with the inference that he possessed the drugs with the intent to deliver.

*Id.*

*Turner* was distinguished in *Branch v. State*, 833 S.W.2d 242 (Tex.App.—Dallas 1992, pet. ref'd), another case in which the defendant challenged the sufficiency of the evidence to support his conviction for possession of a controlled substance with intent to deliver. *Id.* at 244. The court stated that unlike the case before it, "in *Turner*, the State presented no expert or other testimony that the facts of the case would indicate that the appellant possessed the controlled substance with intent to deliver." *Id.*

We, too, find *Turner* distinguishable on this ground. In our case, as in *Branch*, 833 S.W.2d at 245, the State *did* present expert testimony based on which the jury could find beyond a reasonable doubt that appellant possessed the cocaine with the intent to deliver it.

We overrule point of error two.

We affirm the judgment of the trial court.